UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

BISHOP ABRAHAM S. ISRAEL; and
JESUS CHRIST MINISTRIES,

                         Plaintiffs,

v.                                                                5:21-CV-0915
                                                                 (DNH/ML)
CITY OF SYRACUSE; SGT. CARLEO,
Syracuse Police Officer; SISLEY, Syracuse
Police Officer; WOLFE, Syracuse Police
Officer; KIMPEL, Syracuse Police Officer;
MARCUS DeBOTTIS, Jr., Syracuse Police
Officer; LAGO, Syracuse Police Officer; and
RANETTE RELEFORD, CRB Administrator,

                         Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

ABRAHAM S. ISRAEL
  *Pro se* Plaintiff
1409 South McBride Street
Syracuse, New York 13202

MIROSLAV LOVRIC, United States Magistrate Judge

**<u>ORDER and REPORT-RECOMMENDATION</u>**

    The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to

proceed *in forma pauperis* (Dkt. No. 2) filed by Bishop Abraham S. Israel ("Plaintiff") to the

Court for review.  For the reasons discussed below, I grant Plaintiff's *in forma pauperis*

application (Dkt. No. 2) and recommend that Plaintiff's Complaint (Dkt. No. 1) be (1) accepted

in part for filing, and (2) dismissed (a) in part without leave to amend, and (b) in part with leave

to amend.

I.    **BACKGROUND**

On August 13, 2021, Plaintiff[1] commenced this action by filing a Complaint and a motion to proceed *in forma pauperis*.  (Dkt. Nos. 1, 2.)

Construed as liberally as possible, the Complaint alleges that Plaintiff's civil rights were violated by Defendants City of Syracuse, Sgt. Carleo, Sisley, Wolfe, Kimpel, Marcus DeBottis, Jr., Lago, and Ranette Releford ("Defendants") during his interactions with them.  (*See generally* Dkt. No. 1 [Compl.].)

More specifically, the Complaint alleges that on or about July 17, 2020, Plaintiff was at a mall in Syracuse, New York ("Destiny USA") preaching the gospel, when Defendants Sisley and Wolfe approached him, escorted him to a private room, detained him for approximately twenty minutes, then escorted him out of Destiny USA and served him with an appearance ticket— which was ultimately dismissed.  (*Id*. at 6-7.)  Plaintiff alleges that during this incident, Defendants Sisley and Wolfe took Plaintiff's passport, "papers," and $10.00, all without a warrant.  (*Id.*)  Plaintiff alleges that he reported this incident to the Citizen's Review Board ("CRB"), was contacted by Defendant Carleo for an in-person interview in August 2020, but that

---

[1]    Plaintiff, who is not an attorney, cannot represent other plaintiffs.  Although parties have a statutory right to "plead and conduct their own cases," 28 U.S.C. § 1654, unlicensed laypersons may not "represent anyone else other than themselves." *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (internal quotation marks omitted); *see also Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself.").  The Complaint names two plaintiffs—Abraham S. Israel and Jesus Christ Ministries.  (Dkt. No. 1 at 1.)  However, the IFP application is signed solely by Plaintiff.  (Dkt. No. 2.)  Accordingly, I reviewed this action with Abraham S. Israel as the sole plaintiff. *See Yerushalayim v. Liecthung*, 19-CV-4101, 2019 WL 3817125, at *2 (E.D.N.Y. Aug. 13, 2019) (reviewing the action as brought by sole plaintiff, Ben-Siyon Ish Yerushalayim, because he was the only signatory on the complaint and IFP application and, as an unlicensed layperson, was incapable of representing the other named plaintiffs).

Defendant Carleo failed to "rectify[] and safeguard[] Plaintiff's civil rights," and thus, "knowingly and unlawfully participated in the 'racketeering activity.'" (*Id*. at 6-8.)

Plaintiff alleges that on December 13, 2020, the Syracuse Police Department was summoned to 1409 South McBride Street, Syracuse, New York 13202, which is Plaintiff's church ("Jesus Christ Ministries"). (*Id*. at 8-9.) Plaintiff alleges that Defendant Kimpel responded, entered Jesus Christ Ministries without a warrant, searched and seized Plaintiff's sword, and then made Plaintiff and his wife, Natalia Israel, lock up and leave the premises. (*Id*.) Plaintiff alleges that approximately one hour later, at an unidentified location, by an unidentified individual, Plaintiff was assaulted and suffered minor contusions to his face, a swollen, black eye, and was hospitalized. (*Id*.) Plaintiff alleges that he called the Syracuse Police Department, Defendant Kimpel again responded, Plaintiff reported to Defendant Kimpel who assaulted him, and Defendant Kimpel informed Plaintiff that a warrant would be issued for that person's arrest. (*Id*.) Plaintiff alleges that on December 14, 2020, he called the Syracuse Police Department and discovered that Defendant Kimpel wrote a false report for a missing person, instead of the assault on Plaintiff. (*Id*. at 9-10.)

Plaintiff alleges that on April 23, 2021, he and his wife were engaged in an alleged domestic dispute and Defendant DeBottis was the responding officer. (*Id*. at 10.) Plaintiff alleges that when Defendant DeBottis arrived on scene, Plaintiff was approximately one block away near his vehicle. (*Id*.) Plaintiff alleges that, without a warrant, Defendant DeBottis approached Plaintiff, placed him under arrest, placed handcuffs on him, seized his personal possessions—including his passport, papers, and identification—and took him to jail based on unsubstantiated allegations. (*Id*.) Plaintiff alleges that he spent seventeen days in jail as a result of this incident. (*Id*.)

Plaintiff alleges that on August 12, 2021, he called the police because his wife threatened to shoot him at Jesus Christ Ministries.  (*Id*. at 11.)  Plaintiff alleges that Defendant Lago responded to the call and when he arrived, Plaintiff was alone.  (*Id*.)  Plaintiff alleges that he signed an accusatory instrument against his wife and indicated that he wanted to press charges against her.  (*Id*.)  Plaintiff alleges that Defendant Lago informed him that a warrant would be issued for Ms. Israel's arrest.  (*Id*.)  Plaintiff alleges that after praying, he changed his mind about pressing charges, so he called the Syracuse Police Department and was informed that there was "no trace of his accusatory instrument he had signed and there was no record of a complaint."  (*Id*.)

Plaintiff alleges that on July 27, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendants Sisley and Wolfe at Destiny USA on July 17, 2020, and that on December 23, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendant Kimpel on December 13, 2020.  (*Id*. at 12.)  However, Plaintiff alleges that Defendant Releford, the CRB administrator, has failed to provide him with any recourse or means to address the unlawful conduct.  (*Id*. at 12.)

Based on these factual allegations, the Complaint appears to assert the following twenty causes of action: (1) a claim against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. Chapter 96; (2) a claim against Defendant City of Syracuse for dereliction of duty pursuant to 10 U.S.C. § 892; (3) a claim against Defendant City of Syracuse for law enforcement misconduct pursuant to 42 U.S.C. § 14141(a); (4) a claim against Defendants for harassment in the second degree pursuant to N.Y. Penal Law § 240.26(3); (5) a claim against Defendants for unlawful imprisonment pursuant to N.Y. Penal Law § 135.05; (6) a claim against Defendants for menacing in the second degree pursuant to

N.Y. Penal Law § 120.14(1); (7) a claim against Defendants for robbery in the second degree pursuant to N.Y. Penal Law § 160.10(1); (8) a claim against Defendants for criminal tampering in the third degree pursuant to N.Y. Penal Law § 145.14; (9) a claim against Defendants for kidnapping in the first degree pursuant to N.Y. Penal Law § 135.25(1); (10) a claim against Defendants for disruption or disturbance of religious service, funeral, burial, or memorial service, pursuant to N.Y. Penal Law § 240.21; (11) a claim that Plaintiff's right to equal protection of the laws was violated by Defendants pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (12) a claim that Defendants Carleo, Sisley, and Wolfe violated Plaintiff's rights of free speech and freedom of religion pursuant to the First Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (13) a claim of false arrest against Defendants Sisley, Wolfe, and Carleo in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (14) a claim of illegal search and seizure against Defendants Sisley, Wolfe, and Carleo in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (15) a claim of negligence against Defendant Carleo for "failure to deny [P]aintiff the relief of rectifying and safeguarding [P]laintiff's civil right[s]" after Plaintiff filed a CRB complaint regarding the incident that occurred at Destiny USA on July 17, 2020; (16) a claim of illegal search and seizure against Defendant Kimpel pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on December 13, 2020; (17) a claim that Defendant Kimpel failed to protect Plaintiff as a victim of a crime related to the incident on December 13, 2020; (18) a claim of false arrest against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; (19) a claim of illegal search and seizure against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; and (20) a claim of negligence

against Defendant Releford for failing to provide Plaintiff "recourse" regarding his CRB

complaints.  (*See generally* Dkt. No. 1.)  As relief, Plaintiff seeks an injunction against the City

of Syracuse prohibiting any "future Dereliction of Duty" and $3,120,000.00 in damages.  (*Id.*)

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's *in*

*forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.

Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[3]

## III.   LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the

court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter*

*alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

---

[2]    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a . . . complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed.  *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).  "Legal frivolity . . . occurs where 'the claim is based on an

indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be accepted in part for filing and dismissed in part.

### A.    RICO Claims[4]

Plaintiff appears to assert a claim against Defendants pursuant to RICO. It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964 establishes a private right of action for individuals who are harmed by

---

[4]    Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the Complaint. Despite thirty days having elapsed since the filing of his Complaint, Plaintiff has failed to file a Civil RICO statement.

racketeering activity.  18 U.S.C. § 1964.  This private right of action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  Generally, a plaintiff bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property "by reason of a violation of section 1962." *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020) (citing *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c))).  More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property.  *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016).

Regarding the second element, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  To allege an enterprise, a plaintiff must allege an "ongoing organization, formal or informal" and that "the various associates function as a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  In particular, a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583.  The Second Circuit has "long recognized [that] the plain language and purpose of the statute contemplate that a person violates the statute by conducting an enterprise through a pattern of criminality.  It thus follows that a corporate person cannot violate the statute by corrupting itself."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citing

*Bennet v. U.S. Tr. Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir. 1985)).  Accordingly, a plaintiff alleging a civil RICO claim must allege the existence of two distinct entities, a person, and an enterprise.  *Chowaiki*, 2020 WL 1974228, at *8; *Cruz*, 720 F.3d at 120.

Regarding the third and fourth elements, to sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other.  18 U.S.C. § 1961(5).  "Racketeering activity" refers to the predicate acts necessary to establish a RICO claim and includes extortion.  *See* 18 U.S.C. § 1961(1) (listing predicate acts that constitute a racketeering activity).  To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, *and* . . . amount to or pose a threat of continued criminal activity.'"  *Westester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir 1999)).  "'It is this factor of *continuity plus relationship* which combines to produce a pattern.'"  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original) (quoting *Sedima*, 473 U.S. at 496 n.4).

Regarding the relationship factor, for predicate crimes to be considered related to each other under RICO, they must be related to both each other (termed "horizontal relatedness") and the enterprise as a whole ("vertical relatedness").  *Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017 (citing *United States v. Cain*, 671 F.3d 271, 284 (2d Cir. 2012)).  "Vertical relatedness, which entails the simpler analysis, requires only 'that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprises' affairs, or because the offense related to the activities of the enterprise.'"  *Reich*, 858 F.3d at 61 (quoting *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010)).  "[P]redicate acts

are *horizontally* related when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 61 (emphasis in original) (quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)).  Therefore, "when dealing with an enterprise that is primarily a legitimate business . . . courts must determine whether there is a relationship between the predicate crimes themselves' and that requires a look at, *inter alia*, whether the crimes share 'purposes, results, participants, victims, or methods of commission.'" *Id*. (quoting *H.J.*, 492 U.S. at 240).

Regarding the continuity factor, "[t]o satisfy continuity, the plaintiff must establish either 'a series of related predicate acts extending over a substantial period of time' ('closed-ended continuity') or 'a threat of continuing criminal activity' ('open-ended continuity'). *Malvar Egerique*, 2020 WL 1974228, at *9 (quoting *Cofacredit, S.A.*, 187 F.3d at 242).  "RICO targets conduct that 'amounts to or poses a threat of continued criminal activity.'" *Reich*, 858 F.3d at 60 (alterations omitted) (quoting *H.J.*, 492 U.S. at 239).  Closed-ended continuity is "primarily a temporal concept" *id.* (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008)), "and it requires that the predicate crimes 'extend over a substantial period of time'" *id.* (quoting *H.J.*, 492 U.S. at 242).  Generally, the Second Circuit "requires that the crimes extend over at least two years." *Id.* (citing *Spool*, 520 F.3d at 184).  However, criminal activity that by its nature projects into the future with a threat of repetition is considered open-ended continuity and can be established in several ways, including where the predicate acts were the regular way of operating that business, even if the business itself is primarily lawful. *Id.*

"Civil RICO [is] an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).

"Consequently, courts have an obligation to scrutinize civil RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Am. Fed'n of State, Cnty., and Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 345 (S.D.N.Y. 2013) (citation omitted).

As an initial matter, claims to enforce RICO cannot be pursued against Defendant City of Syracuse and the individual Defendants to the extent that they are sued in their official capacities, because the municipality cannot form the requisite criminal intent to establish a predicate act. *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 389 (E.D.N.Y. 2013); *see Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *12 (E.D.N.Y. Sept. 24, 2013) (collecting cases) ("[A]s many previous courts in this Circuit have held, 'a municipal corporation is incapable of having the criminal intent to support RICO's predicate offense requirement.'").

With respect to Plaintiff's claims against Defendants in their individual capacities, he fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. Although Plaintiff's claims are against individuals employed by the City of Syracuse, he fails to plead any facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang*, 2013 WL 5366394, at *13; *see also Peterson v. City of New York*, 2012 WL 75029, at *3-4 (S.D.N.Y. January 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

As a result, I recommend that Plaintiff's RICO claim be dismissed.

### B.    Dereliction of Duty

Plaintiff appears to assert a claim against Defendant City of Syracuse for dereliction of duty pursuant to 10 U.S.C. § 892, which is a violation of the Uniform Code of Military Justice. This statute pertains to military justice law, which is wholly inapplicable to this case. As set forth below in Part IV.D. of this Order and Report-Recommendation, where a private citizen seeks to enforce or prosecute a criminal statute, courts have routinely found that the citizen does not have standing to do so. *See Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 482 n.3 (W.D.N.Y. 2018) (holding that the plaintiff did not have standing to bring a private cause of action pursuant to the punitive articles of the Uniform Code of Military Justice); *see, e.g.*, *Salvador v. State of New York*, 12-CV-7299, 2013 WL 12080930, at *1 (S.D.N.Y. Feb. 19, 2013) (quoting *Leeke v. Timmerman*, 454 U.S. 83, 86 (1981)) ("[A] private party does not have standing to file or prosecute a criminal case because 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'"), *aff'd sub nom. Salvador v. New York*, 550 F. App'x 56 (2d Cir. 2014). As a result, I recommend that Plaintiff's claim against Defendant City of Syracuse for dereliction of duty be dismissed.

### C.    Law Enforcement Misconduct

Plaintiff appears to assert a claim against Defendant City of Syracuse pursuant to 42 U.S.C. § 14141,[5] which prohibits governmental employees from depriving persons of rights, privileges, or immunities secured or protected under the constitution. (*See generally* Dkt. No. 1.) However, that statute contains no private right of action. *See Maretta-Brooks v. Hanuszczak*, 18-CV-0426, 2018 WL 2021480, at *7 (N.D.N.Y. Apr. 26, 2018) (Peebles, M.J.) (citing 34 U.S.C. §

---

[5]    Effective September 1, 2017, that section was recodified as 34 U.S.C. § 12601.

12601(b)) ("Under 34 U.S.C. § 12601, only the United States Attorney General has the authority to bring a civil action."); *see also Steinhardt v. Bernardsville Police Dep't*, 20-2825, 2021 WL 3929321, at *2 n.2 (3d Cir. Sept. 2, 2021) ("[The plaintiff] also referenced . . . 34 U.S.C. § 12601, but [that] provision[] contain[s] no private right of action."); *Gumber v. Fagundes*, 21-CV-3155, 2021 WL 3563065, at *2 (N.D. Cal. Aug. 11, 2021) ("[C]laims under . . . 34 U.S.C. § 12601 . . . must be dismissed because there is no private right of action.").  As a result, I recommend that this claim be dismissed.

### D.    Plaintiff's Claims Pursuant to N.Y. Penal Law

Plaintiff attempts to assert the following seven causes of action pursuant to the N.Y. Penal Law: (1) harassment in the second degree (N.Y. Penal Law § 240.26(3)), (2)  unlawful imprisonment (N.Y. Penal Law § 135.05), (3) menacing in the second degree (N.Y. Penal Law § 120.14(1)), (4) robbery in the second degree (N.Y. Penal Law § 160.10(1)), (5) criminal tampering in the third degree (N.Y. Penal Law § 145.14), (6) kidnapping in the first degree (N.Y. Penal Law § 135.25(1)), and (7) disruption or disturbance of religious service, funeral, burial, or memorial service (N.Y. Penal Law § 240.21).  (Dkt. No. 1.)  However, a plaintiff "has no private right of action to enforce either state or federal criminal statutes."  *Netti v. New York*, 17-CV-0976, 2018 WL 6258559, at *3 (N.D.N.Y. Nov. 20, 2018) (Baxter, M.J.) (citing *Carvel v. Ross*, 09-CV-0722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011)).  As a result, I recommend dismissal of these causes of action for failure to state a claim.

### E.    Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "In order to

establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Chaney v. Koupash*, 04-CV-0126, 2008 WL 5423419, at *20 (N.D.N.Y. Dec. 30, 2008) (Homer, M.J.) (citing *Myers v. Barrett*, 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997) (Pooler, J.)).  In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).

Plaintiff fails to allege any facts plausibly suggesting that he was treated differently from similarly situated individuals or any other individuals. Vague and conclusory allegations, are insufficient to plausibly suggest an equal protection violation. *See De Jesus v. Sears Roebuck & Co.*, Inc., 87 F.3d 65, 70 (2d Cir. 1996); *see Byng v. Delta Recovery Servs.*, LLC., 13-CV-0733, 2013 WL 3897485, at *15, n. 5 (N.D.N.Y. July 29, 2013) (D'Agostino, J.) (finding that Attica inmate alleged no facts in the complaint to indicate he was similarly situated to anyone or that someone else was treated differently than he was).  Accordingly, I recommend that Plaintiff's Fourteenth Amendment Equal Protection claims be dismissed for failure to state a claim upon which relief may be granted.

### F.    First Amendment Claims

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a

tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law*." Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at \*3 (S.D.N.Y. Jan. 24, 1994).

The Second Circuit recently held that "there is no special rule for supervisory liability," and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

To the extent that Plaintiff attempts to assert a First Amendment claim against Defendant Carleo, I recommend that that claim be dismissed because Plaintiff fails to assert any facts plausibly suggesting that Defendant Carleo was personally involved in his removal from Destiny USA on July 17, 2020, while "evangelizing and preaching the Gospel of Jesus Christ." (Dkt. No. 1 at 7.)

However, out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's First Amendment claims against Defendants Sisley and Wolfe.

### G.    Fourth Amendment

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.  "By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on states and, relevant

here, municipalities such as" the City of Syracuse. *Tsinberg v. City of New York,* 20-CV-0749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *City of Ontario v. Quon*, 560 U.S. 746, 750 (2010)). It "applies in the civil context as well" as the criminal. *Sodal v. Cook Cnty.*, 506 U.S. 56, 57 (1992) (collecting cases).

### 1.    False Arrest

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 WL 11548970, at *3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curium)).

For the reasons set forth above in Part IV.F. of this Order and Report-Recommendation, I recommend that to the extent that Plaintiff attempts to assert a false arrest claim against Defendant Carleo, that claim be dismissed because the Complaint fails to allege facts plausibly suggesting Defendant Carleo's personal involvement in Plaintiff's arrest and confinement at Destiny USA on July 17, 2020. (*See generally* Dkt. No. 1.)

However, out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at

191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's false arrest claims against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, and (2) DeBottis regarding the incident on April 23, 2021.

### 2.    Search and Seizure Claims

A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) (quoting *United States v. Jacobson*, 466 U.S. 109, 113 (1984)). The reasonableness of a seizure is the "ultimate standard under the Fourth Amendment." *Sodal*, 506 U.S. at 61 (citation omitted). The permissibility of any governmental seizure is thus "judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).

For the reasons set forth above in Part IV.F. of this Order and Report-Recommendation, I recommend that to the extent that Plaintiff attempts to assert an unreasonable search and seizure claim against Defendant Carleo, that claim be dismissed because the Complaint fails to allege facts plausibly suggesting Defendant Carleo's personal involvement in the search and seizure at Destiny USA on July 17, 2020. (*See generally* Dkt. No. 1.)

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourth Amendment deprivation of property claim against Defendants (1) Sisley and Wolfe regarding the

incident at Destiny USA on July 17, 2020, (2) Kimpel regarding the incident on December 13, 2020, and (3) DeBottis regarding the incident on April 23, 2021.

### H.    Failure to Protect

Plaintiff appears to allege that Defendant Kimpel failed to protect him because Defendant Kimpel did not secure an arrest warrant for the person who assaulted Plaintiff on December 13, 2020.  (Dkt. No. 1 at 8-10.)  However, a police officer's alleged failure to protect one citizen from another does not violate due process, absent the existence of a special relationship between the police officer and the victim such as a custodial relationship (which is not present here). *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195-96 (1989); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993).

As a result, I recommend that Plaintiff's failure to protect claim be dismissed for failure to state a claim.

### I.    State Law Negligence Claims

"In order to prevail on a negligence claim, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'"  *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (N.Y. 2016) (quoting *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (N.Y. 1985)).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's negligence claims against Defendants Carleo and Releford.

### J.    Municipal Claims

As set forth above in Parts IV.A., B., C., D., and E., of this Order and Report-Recommendation, I recommend that all claims against Defendant City of Syracuse be dismissed. However, in the alternative, I also recommend that the claims against Defendant City of Syracuse—a municipality—be dismissed for failure to state a claim against a municipal entity.

A municipality may only be named as a defendant in certain circumstances.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983.  A municipality may not be held liable solely because it employs a tortfeasor.  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).  Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury.  *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation.  *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).  Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees.  *Connick*, 563 U.S. at 51.  However, municipal liability is most tenuous when a claim turns on the failure to train.  *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was

the policy in Monell")).  To satisfy the statute, a municipality's failure to train its employees must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint.  Plaintiff essentially complains of four discrete incidents, during which officers employed by the City of Syracuse allegedly did not act properly.  There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts.  In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with Defendants.

As a result, I recommend that Plaintiff's claims against Defendant City of Syracuse be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted by*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### K.    Claims Against Defendants in Their Official Capacities

"An official capacity suit against a municipal employee is a suit against the municipality itself."  *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at *9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by*, 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.).  However, for the reasons set forth in Part IV.J. of this Order and Report-Recommendation, I find that Plaintiff in this case has alleged no facts that would state a claim against the City of Syracuse.

As a result, I recommend that to the extent Plaintiff attempts to assert claims against Defendants in their official capacities, those claims be dismissed.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

I recommend that Plaintiff's claims for dereliction of duty, law enforcement misconduct, and claims pursuant to the New York Penal law—all of which do not permit private causes of action by Plaintiff—be dismissed without leave to amend.

---

[6]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

This Court has serious doubts about whether Plaintiff can amend to assert actionable claims: (1) pursuant to RICO against Defendants; (2) for violation of the right to equal protection pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, against Defendants; (3) for violation of his freedom of speech and religion pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendant Carleo; (4) for false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo; (5) for an unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo; and (6) for failure to protect against Defendant Kimpel.  However, in this case, I am unable to conclude with complete certainty that if permitted leave to amend his Complaint, Plaintiff could not assert plausible claims on these grounds.  Accordingly, I recommend that leave to amend be granted for these claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'"  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they

were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.

1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing

Complaint, and must be a wholly integrated and complete pleading that does not rely upon or

incorporate by reference any pleading or document previously filed with the Court. *See Shields*

*v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an

amended complaint ordinarily supersedes the original and renders it of no legal effect.").

    **ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is

**GRANTED**; and it is further respectfully

    **RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **ACCEPTED FOR**

**FILING** with respect to Plaintiff's claims of

(1) That his right to free speech/religion was violated pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(2) False arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(3) Unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(4) Unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Kimpel regarding the incident on December 13, 2020;

(5) False arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021;

(6) Unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021; and

(7) Negligence pursuant to New York common law against Defendants Carleo and Releford;

and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH**

**LEAVE TO REPLEAD** with respect to Plaintiff's claims

(1) Pursuant to RICO, against Defendants;

(2) That his right to equal protection was violated pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, against Defendants;

(3) That his right to free of speech/religion was violated by Defendant Carleo, pursuant to the First Amendment and 42 U.S.C. § 1983, at Destiny USA on July 17, 2020;

(4) Of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020;

(5) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020; and

(6) Of failure to protect against Defendant Kimpel;

and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED**

**WITHOUT LEAVE TO REPLEAD** with respect to Plaintiff's claims of

(1) Dereliction of duty pursuant to 10 U.S.C. § 892, against Defendants;

(2) Law enforcement misconduct pursuant to 42 U.S.C. § 14141(a) or 34 U.S.C. § 12601, against Defendant City of Syracuse;

(3) Harassment in the second degree pursuant to N.Y. Penal Law § 240.26(3), against Defendants;

(4) Unlawful imprisonment pursuant to N.Y. Penal Law § 135.05, against Defendants;

(5) Menacing in the second degree pursuant to N.Y. Penal Law § 120.14(1), against Defendants;

    (6)   Robbery in the second degree pursuant to N.Y. Penal Law § 160.10(1), against Defendants;

    (7)   Criminal tampering in the third degree pursuant to N.Y. Penal Law § 145.14, against Defendants;

    (8)   Kidnapping in the first degree pursuant to N.Y. Penal Law § 135.25(1), against Defendants; and

    (9)   Disruption or disturbance of religious service, burial, or memorial service pursuant to N.Y. Penal Law § 240.21, against Defendants;

and it is further

    **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

    **NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: September 16 , 2021
       Binghamton, New York

*Miroslav Lovric*
Miroslav Lovric
U.S. Magistrate Judge

---

[7]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[8]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).